## MODERN ENGINEERING CO., Inc. v. UNITED STATES.

### No. 48876.

United States Court of Claims.
July 13, 1953.

Sheldon E. Bernstein, Washington, D. C., for plaintiff. Newmyer & Bress, Washington, D. C., and Blum, Jacobson & Shkoler, Chicago, Ill., were on the brief.

Mary K. Fagan, Washington, D. C., with whom was Holmes Baldridge, Asst. Atty. Gen., for defendant. Donald D. Webster, Baltimore, Md., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

In this case we are once again requested by defendant to deny plaintiff's claim as a war contractor for relief under the provi-

sions of the War Contract Hardship Claims Act, popularly known as the Lucas Act, 60 Stat. 902, as amended by 62 Stat. 869, 992, 41 U.S.C.A. § 106 note. On April 4, 1949 we overruled defendant's motion to dismiss plaintiff's petition and held, among other things, that plaintiff had filed with the departments concerned prior to August 14, 1945, written requests for relief of the type contemplated by Section 3 of the Lucas Act. See 83 F.Supp. 346, 113 Ct.Cl. 272. Now, however, defendant contends that it is entitled to a summary judgment denying plaintiff's claim on the grounds (1) that the claim was not filed within the period prescribed by the Lucas Act, and (2) that the requests for relief which we previously held to be sufficient are in fact insufficient when reviewed in the light of the opinion of the Supreme Court of the United States in Fogarty v. United States, 340 U.S. 8, 13, 71 S.Ct. 5, 95 L.Ed. 10, and in the light of our opinions rendered subsequent to the Fogarty decision.

We will consider first defendant's contention that plaintiff's claim for relief was untimely filed under Section 3 of the Lucas Act. This section provides in pertinent part as follows:

"Claims for losses shall not be considered unless filed with the. department or agency concerned within six months after the date of approval of this Act [August 7, 1946], and shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945 * * *." [1]

According to the petition and the exhibits and affidavits attached thereto, it appears that plaintiff's alleged losses arose principally out of subcontracts entered into during 1943 with the V. P. Loftis Company, and its successor Tidewater Construction Company, to furnish specialized equipment for eight floating dry docks which were being constructed by these firms for the Navy Department. Due to change orders which at first reduced the quantities plaintiff was to furnish and later increased them, plaintiff's production costs were increased so substantially as to cause it to suffer net losses on all of its wartime contracts with the Government. Consequently, following the passage of the Lucas Act, plaintiff's officers decided to attempt to obtain relief under its provisions, and on Friday, February 6, 1947, at 10:00 A.M., its counsel deposited in the mail at Chicago, Illinois, such a claim for relief addressed to the Bureau of Yards and Docks, Navy Department, Washington, D. C. This letter according to the affidavit of William Cunningham, assistant superintendent of the United States Government Official Mail Service in Washington, D. C., should have arrived in Washington on the morning of February 7, 1947, the last day of the six-month period provided by the Act, and after processing by the Post Office, should have been delivered to the Bureau of Yards and Docks during the afternoon of February 7, 1947 on either the 12:40 P.M. or 4:20 P.M. regularly scheduled delivery truck. Actually, however, the letter was not received by officials of the Bureau of Yards and Docks until Monday, February 10, 1947, which was several days after the expiration of the statutory period. Officials of the Bureau of Yards and Docks noted the date of its receipt upon the face of the claim and promptly referred it to the Navy Department War Contracts Relief Board for consideration.

On May 18, 1948, the War Contracts Relief Board made its final determination rejecting plaintiff's claim. In this decision the Board directed attention to the fact that the claim was not received until after the February 7, 1947 deadline. However, rather than rest its decision on this ground, the Board elected to consider the claim in full and concluded that it should be denied on the merits. Thereafter, plaintiff instituted this action in accordance with the terms of the Act.

1. Paragraph 201 of Executive Order 9786, October 5, 1946, 3 C.F.R. 1946 Supp., pp. 165, 166, 11 F.R. 11553, 11555, U.S. Code Cong.Service 1946, p. 1849, also provides:

"No claim shall be received or considered by any war agency unless properly filed in accordance with the Act and these Regulations on or before February 7, 1947."

As stated above, defendant maintains that these facts require this court to dismiss plaintiff's claim for noncompliance with the period of limitations prescribed in the Lucas Act. On the other hand, plaintiff insists that the facts relating to the mailing and to the usual course of the mails create a presumption, not rebutted by defendant, that the letter was received by the Navy Department on Friday, February 7, 1947, and that this presumption of delivery satisfies the requirements of Section 3 of the Lucas Act relating to the filing of claims, irrespective of the received date placed upon the face of the claim by the Bureau of Yards and Docks. Plaintiff also urges that defendant, having failed to raise the issue of limitations at an earlier stage in this litigation, which has been pending for several years, should now be estopped from asserting this contention. In addition, plaintiff urges that the defect, if any, was waived by the Navy Department War Contracts Relief Board in reviewing the claim on its merits.

In considering the questions with which we are thus confronted, we find that our task is eased by the fact that these issues have been considered at length by the Supreme Court of the United States, whose views thereupon are controlling in this case. In United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897, the Supreme Court had to determine whether the requirements of a statute, which called for the filing of a certain document by a specified date with a designated Government office, were fulfilled by merely placing the document in the mail prior to the due date. The Supreme Court there concluded that mere mailing was insufficient because it did not necessarily result in the permanent preservation of the document or paper involved as contemplated by the term "file." The Court stated, 241 U.S. at pages 76, 78, 36 S. Ct. at page 509, as follows:

" 'The word "file" is derived from the Latin word "filum," and relates to the ancient practice of placing papers on a thread or wire for safe-keeping and ready reference. Filing, it must be observed, is not complete until the document is delivered and received. "Shall file" means to *deliver to the office, and not sent through the United States mails.* [Emphasis supplied.] Gates v. State, 128 N.Y. 221, 28 N.E. 373. A paper is filed when it is delivered to the proper official and by him received and filed. Bouv.Law Dict., Rawles Third Revision, page 1219; Hoyt v. Stark, 134 Cal. 178, 66 P. 223, 86 Am.St.Rep. 246; Westcott v. Eccles, 3 Utah 258, 2 P. 525; In re Von Borcke, D.C., 94 F. 352; Mutual Life Ins. Co. v. Phinney, 9 Cir., 76 F. 617, 618. Anything short of delivery would leave the filing a disputable fact, and that would not be consistent with the spirit of the act.'

*    *    *    *    *    *

" * * * our attention has not been called to any case which decides that the requirement of a statute, whether to secure or preserve a right or to avoid the guilt of a crime, that a paper shall be filed with a particular officer, is satisfied by a deposit in the postoffice at some distant place. To so hold would create revolutions in the procedure of the law and the regulation of rights. * * *"

These views have been applied by many courts to a number of situations exceedingly akin to the circumstances in which the plaintiff now finds itself. McRae v. Woods, Em.App., 165 F.2d 790; Park Management, Inc., v. Porter, Em.App., 157 F.2d 688, 689; Stebbins' Estate v. Helvering, 74 App.D.C. 21, 121 F.2d 892; Poynor v. Commissioner, 5 Cir., 81 F.2d 521; Lewis-Hall Iron Works v. Blair, 57 App.D. C. 364, 23 F.2d 972, certiorari denied 277 U.S. 592, 48 S.Ct. 529, 72 L.Ed. 1004; contra, Central Paper Company v. Commissioner, 6 Cir., 199 F.2d 902. Likewise, we believe that these views must also lead us to dismiss the plaintiff's petition in the instant case. Plaintiff's present predicament stems solely from the fact that it did not make any allowance for a failure of the mail to move strictly according to schedule, and did not take into consideration the possible intervention of the weekend. The occurrence of these conditions, however, is a risk which plaintiff must be held to have assumed when it elected to use the mails as

a means of filing its claim. Clearly this situation is not comparable to the mailing of an acceptance of an offer which has been made by mail, under the law of contracts.

■ Our conclusion is not altered by the fact that the Navy Department War Contracts Relief Board decided to consider plaintiff's claim on the merits. This decision by the Board did not, and could not, operate to effect a waiver of plaintiff's failure to submit its claim on time. As the Supreme Court pointed out in United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405, no officer or agency of the United States has the power to waive the period of limitations placed upon claims against the United States, thereby defeating the only purpose of the statutory provision by imposing a liability upon the United States which otherwise would not exist. The Supreme Court went on to observe, 302 U.S. at page 533, 58 S.Ct. at page 323, as follows:

> "The respondent urges that, although the amendment was not timely, the Commissioner, in considering the merits of the position taken therein, waived any objection that might have been available to him * * *. The argument confuses the power of the Commissioner to disregard a statutory mandate with his undoubted power to waive the requirements of the Treasury regulations. The distinction was pointed out in United States v. Memphis Cotton Oil Co., 288 U.S. 62, 71, 53 S.Ct. 278, 281, 77 L.Ed. 619, wherein it was said: 'The line of division must be kept a sharp one between the functions of a statute requiring the presentation of a claim within a given period of time, and the function of a regulation making provision as to form. The function of the statute, like that of limitations generally, is to give protection against stale demands. The function

of the regulation is to facilitate research.' In the cited case, and others decided at about the same time, we held that, while the Commissioner might have enforced the regulation and rejected a claim for failure to comply with it in omitting to state with particularity the grounds on which the claim was based, he was not bound to do so, but might waive the requirement of the regulation and consider a general claim on its merits. This was far from holding that after the period set by the statute for the filing of claims he had power to accept and act upon claims that complied with or violated his regulations."

Cf. United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398; Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253.

■ These principles enumerated by the Supreme Court are equally applicable to plaintiff's contention that defendant is now estopped to urge the bar of limitations after having permitted this litigation to continue for several years without previously asserting it. Irrespective of whether defendant had raised limitations or not, it would be our duty under these circumstances to dismiss plaintiff's petition. Finn v. United States, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128. Any other action on our part would plainly be erroneous.

Plaintiff's failure to place its claim on file by the date specified by Congress in the Lucas Act makes it unnecessary for us to consider defendant's other contentions. Therefore, defendant's motion for summary judgment is granted and plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.