CARL M. LOEB, RHOADES & CO., HERBERT L. ABRONS, MARY G.
ABRONS, EDWARD ROSS ARANOW and RITA A. ARANOW,
Claimants Below,
Appellants,

*vs.*

HILTON HOTELS CORPORATION, Surviving Corporation after merger
with Statler Hotels Delaware Corporation, Defendant Below,
Appellee.

*Supreme Court, On Appeal, September 6 1966.*

*William S. Megonigal, Jr.,* of Morris, Nichols, Arsht & Tunnell, Wilmington, and Aranow, Brodsky, Bohlinger, Einhorn & Dann, New York City, for claimants below, appellants.

*Robert H. Richards, Jr.,* and *E. Norman Veasey,* of Richards, Layton & Finger, Wilmington, for defendant below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice: This appeal involves the validity, under the Delaware General Corporation Law, of objections to the merger of the Statler Hotels Delaware Corporation, a Delaware corporation, (hereinafter "Statler") with the defendant Hilton Hotels Corporation, a Delaware corporation, (hereinafter "Hilton").

As prerequisites to qualification for appraisal and payment for stock 8 *Del.C.* § 262(*b*) requires that a dissenting stockholder must (1) file with the corporation a written objection to the merger before the taking of the stockholder vote thereon; (2) refrain from voting his shares in favor of the merger; and (3) make written demands for payment of his stock.

The material facts are undisputed:

By notice dated June 22, 1962, Statler informed its stockholders of a special meeting to be held in Chicago on July 13, 1962, for the purpose of voting on a proposed merger of Statler into Hilton.

By letter dated July 3, 1962, the claimants Edward Ross Aranow and Rita A. Aranow (hereinafter "the Aranows"), notified Statler:

> "The undersigned, owners of 500 shares of Common Stock of Statler Hotels Delaware Corporation, hereby object pursuant to the provisions of Section 262(b) of the Delaware General Corporation Law, to the merger of the corporation into Hilton Hotels Corporation. This stock was held on the record date for voting at the stockholders' meeting in the name of Carl M. Loeb, Rhoades & Co. and, pursuant to our specific instruction, was not voted in favor of said merger."

This letter was sent with the knowledge and consent of the claimant Carl M. Loeb, Rhoades & Co. (hereinafter "Loeb"); and Statler received it on July 10, 1962.

By letter dated July 11, 1962, and mailed prior to noon on that day, Loeb in New York wrote to Hilton in Chicago stating that as the registered stockholder of 1,500 shares,[1] upon "instructions received from certain clients", it requested the letter to be accepted as written objection to the proposed merger "prior to the meeting and as a claim for value of the shares under Section 262 of the General Corporation Law of the State of Delaware." This letter was not sent by registered mail or special delivery.

On July 12, Loeb's proxy clerk telephoned Hilton's Secretary, informed him of the dispatch of the July 11 letter, identified the beneficial owners of the shares referred to in the letter, and inquired whether the procedure followed was correct. The Secretary replied that it was "all right, don't worry", but no inquiry was made, nor answer given, as to receipt of the letter.

1. By letter of July 19, Loeb advised Hilton that of the 1,500 shares referred to in the letter of July 11, the Aranows "owned" 500 and the claimants Herbert L. Abrons and Mary G. Abrons "owned" 1,000 shares.

The stockholder meeting was convened at 10:00 A.M. on July 13 and was adjourned before 11:00 A.M. The original of Loeb's letter of July 11, admitted in evidence without objection, bore a rubber stamp marking "RECEIVED July 13, 1962 MAIN OFFICE" and a hand-written ink notation "Received at Mail Desk 11:30 am per Lily Poliquin."

The claimants demanded payment under § 262 of the value of the 1,500 shares of stock. In the proceedings for the appointment of an appraiser to determine the value of the stock, Hilton objected to the claims on the ground that valid written objections to the merger were not filed before the taking of the vote thereon. The Chancery Court sustained Hilton's objections[2]; the claimants appeal.

## I.

The claimants contend that the Chancery Court erred in holding that the letter of July 3, sent by the Aranows regarding the 500 shares of which they were the beneficial owners, was inadequate as the written objection required by § 262(b).

It is settled that only a registered owner is a "stockholder" within the meaning of the merger-appraisal provisions of the General Corporation Law of Delaware, E. g., *Olivetti Underwood Corporation v. Jacques Coe & Co., Del.,* 217 *A.2d* 683 (1966). The rule, and the reasons therefor, apply to the first step under § 262(b) as well as to the later steps. Compare *Salt Dome Oil Corp. v. Schenck,* 28 *Del.Ch.* 433, 41 *A.2d* 583, 158 *A.L.R.* 975 (1945). For the reasons set forth in *Olivetti* and *Salt Dome,* a corporation is entitled to limit recognition to the written objections of stockholders of record, acting either personally or by purported agents. See *Zeeb v. Atlas Powder Co.,* 32 *Del.Ch.* 486, 87 *A.2d* 123 (1952).

It appears that the claimants concede this proposition; but they contend that the letter of July 3 fits the rule because the Aranows, the beneficial owners, acted as agents for Loeb, the registered stockholder.

The fallacy of this position is that no such agency was apparent to the corporation on the face of the letter. The Aranows represented themselves therein as the "owners", although they were

---

2. See In re *Hilton Hotels Corp.,* 42 *Del.Ch.* 283, 210 *A.2d* 185 (1965).

not stockholders of record; they did not purport to act as agents for Loeb[3]. Moreover, Loeb's knowledge of and consent to the letter, established later in the appraisal proceedings, were not communicated to the corporation by the letter. The corporation was justified, therefore, in disregarding the letter as an objection under § 262(b).

■ Relying upon *Zeeb v. Atlas Powder Co., supra,* the claimants contend that the agency of the beneficial owners for the registered owner should have been presumed, and that the corporation had the burden of overcoming such presumption in the appraisal proceedings. The argument is unacceptable. Such presumption is inconsistent with the facts of corporate life: for example, the beneficial owners of stock, such as wards and *cestui que* trusts, are in disagreement with the registered holders of their stock often enough to militate against the establishment of the presumption urged. And the *Zeeb* case is not authority for the presumption the claimants seek to establish. *Zeeb* permits the presumption of the authority of a purported agent at the first of the three stages of § 262(b); but, as noted, the Aranows did not identify themselves as agents in the letter of July 3. Therefore, the authority of a purported agent is not the issue here.[4]

We find no error in the conclusion of the Chancery Court that the letter of July 3 was inadequate as the written objection required by § 262(b).

## II.

It is contended that the Chancery Court erred in finding that the Loeb letter of July 11 was not a valid written objection under § 262(b) because it was not filed in time.

On the basis of evidence that, in the normal course of events, mail from New York reaches destination in Chicago within one day, the appellants claim the benefit of a presumption that the Loeb letter

3. Confusing, but immaterial on this appeal, were the statements in the letter of July 3 that the stock "was held on the record date for voting" by Loeb and "was not voted" at a meeting to be held ten days later.

4. It follows that we do not reach the question of burden of proof on this issue. In view of the claimants' contention, however, attention is invited to the statement in *Zeeb* that the burden of proof is on the stockholder when, in the appraisal proceedings, the corporation defends against the claim for payment on the ground that no authority had been delegated by the registered stockholder to the purported agent (87 *A.2d* 128).

mailed July 11 was received on July 12, in time for the stockholders' meeting. In support of a presumption that a letter reaches its destination in due course of post when it is proved that it was mailed properly, the claimants cite *Bussard v. Levering, 6 Wheat.* (19 *U.S.*) 102, 5 *L.Ed.* 215 (1821); *Kimberly v. Arms,* 129 *U.S.,* 512, 529, 9 *S.Ct.* 355, 32 *L.Ed.* 764 (1889); *Citizens' Bank & Trust Co. of Middlesboro, Ky. v. Allen,* 43 *F.2d* 549, 552 (4th Cir. 1930); 1 *Williston, Contracts* § 87 (*3d Ed. Jaeger* 1957). The cited authorities deal with contract cases involving the acceptance of offers by mail, and the well-known common law presumption arising from mailing in such instances.

■ The claimants' burden of proof in this part of the case is not fulfilled by such presumption. § 262(*b*) requires that the written objection be "filed * * * with the corporation before the taking of the vote" on the merger. The word "filed", in this context, means delivery to the corporation. The very purpose of the written objection, as notice to the corporation of possible dissentients, *Zeeb v. Atlas Powder Co., supra,* requires actual receipt by the corporation before the vote is taken. The claimants had the burden of proving compliance with each of the statutory prerequisites, including this one. In view of the importance of the time of receipt of the objection, as specified by the Statute, the claimants may not rely upon the claimed presumption as fulfillment of their burden of proof. They must prove actual delivery to the corporation before the vote.

As a practical matter, this is not a harsh burden in view of the ready availability of registered mail receipts as evidence of delivery; and also as a practical matter, it is unrealistic, even in this day and age, to expect long distance mail delivery of the hourly precision which must be assumed as the basis of the presumption the claimants seek to invoke. Compare *Modern Engineering Co. v. United States,* 113 *F.Supp.* 685, 126 *Ct.Cl.* 136 (1953).

The claimants have presented no other evidence in support of their burden of proof. Indeed, the only evidence in the case rebuts the presumption urged by the claimants. The receipt stamp and the handwritten notation on the original of the letter, presented in evidence by Hilton without objection, establish that the letter came into the corporation's possession after the stockholders' meeting had adjourned. Thus, the only evidence in the case supports the conclusion

of the Chancery Court that the claimants failed to prove that the corporation received Loeb's letter before the taking of the stockholders' vote on the merger.

■ The claimants rely upon two circumstances to bolster their position: the timely receipt of the Aranow letter of July 3, and the telephone conversation between Loeb's proxy clerk and Hilton's Secretary. It is manifest, we think, that the claimants' burden of proving the timely receipt of the letter of July 11 is not fulfilled by these circumstances.

### III.

Finally, the claimants argue that Hilton is estopped from raising these objections by the following facts: the price of Hilton stock was approximately $23.50 per share in July 1962; $28.00 in January 1963; $26.50 in March 1963; and $17.00 in the Fall of 1963; the claimants first learned of Hilton's objections in February 1964; during the months intervening between July 1962 and February 1964, Hilton negotiated with the claimants as with other objecting stockholders. The claimants add the "assurances" given to Loeb's proxy clerk by Hilton's Secretary in the July 12 telephone conversation. From these facts, the claimants argue that they were prejudiced to the extent of the drop in the stock values as the result of being lulled, by Hilton's continued failure to object, into believing that Hilton had no objection to their claims.

■ We agree with the Chancery Court that an estoppel does not arise from these facts. Hilton had no duty to register an objection to the validity of the claims until called upon to file an answer in these proceedings. Passage of time did not create an estoppel where there was no duty to act. The settlement negotiations relied upon are not in the record before us because the proffered evidence of the negotiations was ruled inadmissible by the Chancery Court[5]; and no appeal has been taken from that ruling. As to the telephone conversation on July 12, the record shows no "assurances" such as would give rise to the estoppel claimed.

\* \* \*

We find no error in the judgment. It is affirmed.

---

5. See 210 *A.2d* 189-190.